UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

AARON DURALL, et al,

    Defendants.

Case No.
3:20-CR-86-TJC-PDB

## DEFENDANTS JOINT RESPONSE TO THE GOVERNMENT'S MOTION IN LIMINE

Defendants Aaron Durall and Neisha Zaffuto jointly respond to the Government's Motion in Limine as follows:

The government's Motion in Limine (Doc. 211) offers an assortment of fears that the government entertains regarding the defendants' plans at trial. The defense is not clear which of the many fears the government wishes the court to address.

In the opening paragraph, the government insists that the defense should be barred from (1) <u>arguing</u> that the private insurance companies were not defrauded, because they paid the claims; (2) <u>offering evidence</u> that the private insurance companies were not defrauded. This proposed limitation on "evidence" the government fears will be introduced by the defense is reinforced in the second sentence, when the government declares that "such evidence is irrelevant, …" While the government's motion has one limited (and uncontroversial) request, no other aspect of the motion has merit. The one limited valid point is this: the defendant in a fraud case may not argue, "I got away with this fraud, and therefore, I am not guilty."

1

After insisting that the defendants should be prohibited from "offering evidence" that the insurance companies paid the claims, the government nonchalantly then declares that *the government* will be introducing evidence that the insurance companies paid the claims (Doc. 211, page 9). The lack of symmetry in the government's argument apparently escapes the prosecution.

The government also insists that *the government* will introduce evidence from insurance company employees that they *would not* have paid claims if they had known the tests were done at independent labs. Yet, according to the government's motion, the defendants should be barred from introducing evidence that the insurance companies *did* pay for tests performed at independent labs, even though there was no misrepresentation by any defendant that the tests were performed at any particular location (including at an independent lab).

The government offers no evidence in its Motion in Limine that any insurance company representative ever told any defendant that "the insurers would not have paid the claims coming out of the rural hospitals if they had known the [tests] were performed at independent labs for patients with no connection with the hospitals …" (Doc. 211, p. 8). There is also no indication anywhere in the discovery that the government intends to introduce evidence that the insurers' told any defendant about the insurers' "intent," though there are numerous references to what the insurers' "contemplated" or what the insurers' "believed" or what the insurers' unexpressed state of mind was.

So the government intends to introduce evidence regarding what the insurers' "thought" but the defendants may not introduce what they thought. The government

intends to introduce evidence that the insurers paid the claims, but the defendants may not introduce evidence that the insurers paid the claims.

The only argument that makes any sense in the government's motion is that the defendants may not "blame the victim" and in response to that, Aaron Durall responds: "Fear not: this defendant will make no such argument, because the insurers were not victims."

The defense will surely be introducing evidence and arguing to the jury that the claims were paid. The claims were paid over and over again for year after year. And to be sure, this had a significant impact on the defendants' state of mind (despite the government's argument to the contrary, Doc. 211, page 10). The fact that the insurers' paid the claims for years led the defendants to believe (in addition to the language of the contracts and the claim forms) that the hospitals and the labs were entitled to be paid regardless of whether the tests were performed at the hospital or at an independent lab. The defendants surely intend to introduce evidence and argue to the jury that they believed that their claims for payment were valid, and that the contracts did not foreclose the validity of any of the claims or payments.

The government's argument notwithstanding – "Evidence regarding the insurance companies' conduct has nothing to do with the Defendants' guilt or innocence as a matter of law, and therefore fails to meet the standard for relevance" (Doc. 211, page 11) – is wrong as a matter of law. While it is true that in a typical fraud case, the victim's negligence or ignorance is not relevant, it is most certainly *not* true that an alleged victim's

3

*conduct* is irrelevant, particularly as it bears on the defendant's state of mind, belief, or good faith.

If there are any victims in this case, the defendants qualify. And the government should be barred from blaming the defendants for the insurers' payments.

## Citation of Authority

In any fraud case, the government shoulders the burden of proving the defendant knowingly and willfully intended to defraud the victim: to deceive or cheat the victim out of money. This is an essential element of the offense of mail fraud, wire fraud and health care fraud. When the government charges that the defendants conspired to commit fraud, the government must prove that the defendants knowingly agreed unlawfully to defraud the victim. The government must also prove that the defendant did not act in good faith (without the intent to defraud). The government must prove that the defendant obtained money to which he or she was not entitled, *and* that the defendant *intended* to obtain money to which he *knew* he was not entitled. An error in judgment is not a crime. A bad business decision is not a crime. Eleventh Circuit Pattern Jury Instruction, #S17 (2016).

The defendant has a constitutional right to present a defense (though he has no burden of proof) and to invite the jury to conclude that the defendant did not have the intent to defraud, to deceive, or to cheat. This right is implicit in the Due Process Clause, the Compulsory Process Clause, and the Confrontation Clause. *Specht v. Patterson*, 386 U.S. 605 (1967); *United States v. Ramos*, 933 F.3d 968, 974 (11th Cir. 1991); *United States v. Lankford*, 955 F.2d 1545 (11th Cir. 1992). In showing the absence of an intent to defraud, the defense is not limited to direct proof (e.g., the defendant's testimony at trial that he did

not intend to defraud).  Circumstantial evidence may be introduced to show an absence of fraudulent intent.

Consider, for example, *United States v. Ethridge,* 948 F.2d 1215 (11th Cir. 1992). The defendants submitted claims to an insurance company as a result of a fire loss.  Some of the items on the claims were undeniably not lost in the fire. At trial, they sought to introduce evidence that the claimed losses exceeded the policy limits, therefore, even excluding the falsely claimed items, they could not have received more than that to which they were entitled. The Eleventh Circuit held that filing a claim for more than the policy limit is not a defense to mail fraud.  Yet, the conviction was reversed, because the trial court erred by excluding the evidence.  The evidence was relevant in deciphering the intent of the defendant.  After all, the jury could have reasoned, as argued by the defense, that if the legitimately claimed lost items exhausted the coverage, why would the defendants have knowingly, with the intent to defraud, added uncovered items?  This argument rationally related to the defendants' claim that they lacked fraudulent intent.

*Ethridge* proves that a defendant's intent can be shown by circumstantial evidence that is not direct proof of the defendant's state of mind, but through the surrounding events that are inconsistent with the existence of a scheme to defraud.  The fact that the insurance companies in our case routinely paid the claims would lead any person to believe that the insurance companies did not do so by mistake, or because they were misled, but rather, because the companies knew the claims were justified and supported payment.

*Ethridge* is not an outlier.  Evidence that relates to the payor's behavior is relevant to the defendant's state of mind in other contexts, as well.  In *United States v. Todd,* 108

5

F.3d 1329 (11th Cir. 1997), the defendant was charged with embezzlement from an employee pension plan. 18 U.S.C. § 664. The defendant sought to introduce evidence that the employees were very well paid and were concerned with the welfare of the company and *would have approved* the use of their contributions to ensure the continued vitality of the company. Obviously, this is not a defense. The trial court held that this evidence was irrelevant. The Eleventh Circuit reversed. The defendant's argument that he believed the employees consented to his use of the funds was clearly probative of his defense. Moreover, the evidence would have rebutted the government's "motivated by greed" argument.

Similar to *Todd* and *Ethridge* is the case of *United States v. Goodman,* 850 F.2d 1473 (11th Cir. 1988). The defendant was charged with an antitrust violation, specifically, conspiring to allocate customers, a *per se* violation. High prices is not an element of such an offense. The government, however, argued that the existence of high prices was probative of the existence of the conspiracy to allocate customers. The defendant sought to prove that the prices were raised because of unrelated increases in costs and not because of a customer allocation conspiracy. Excluding this evidence was reversible error. The appellate court observed that the trial court may not exclude relevant evidence which is crucial to the establishment of a valid defense.

The Eleventh Circuit also reversed the conviction in *United States v. Sheffield,* 992 F.2d 1164 (11th Cir. 1993). The defendant was prosecuted for using military base facilities (where he was employed) to make fishing lures for his personal use. He claimed that base facilities were frequently used to make fishing lures for retirement benefits for officers and

6

employees. This evidence should have been admitted "to complete the story" and to put his actions in the proper context. Even though the use of the facilities for private purposes was illegal and the custom at the base was not a defense to the charge, the evidence was relevant to the defendant's state of mind.

These cases – cases which require the trial court to permit the defense to introduce evidence that could lead a jury to believe that the defendant did not intend to deceive the victim – are not limited to the Eleventh Circuit.

*United States v. Williams*, 836 F.3d 1 (D.C. Cir. 2016), is a case in which, like here, the government protested that the defense was attempting to "blame the victim" which the defense agrees is not permissible. In *Williams*, the defendant was charged with second degree murder for his role in a "hazing" incident involving another soldier on a military base. The hazing involved several soldiers beating another soldier (with his consent) for a few minutes. The incident resulted in the death of the hazee. The defendant argued that the victim's consent was relevant to the defendant's state of mind. Second degree murder requires the government to prove malice and malice can be proven by showing that a defendant intended to kill or, as the government argued in that case, that he consciously disregarded an extreme risk of death or serious bodily injury. While it is true that the defendant cannot "blame the victim," the defense is still entitled to offer evidence that negates his culpable state of mind. The defense counsel argued that the victims' consent to being hazed was relevant to the determination whether the defendant acted with malice. In closing argument, the prosecutor told the jury that was entirely erroneous and the victim's consent was not relevant to any issue in the case. After closing argument, the

judge declined to issue an instruction that explained that the victim's consent could be relevant to the issue of malice. The D.C. Circuit reversed the conviction. The victim's consenting behavior—that is, his "continued, and enthusiastic statements that he wanted the initiation to continue"—suggested that Williams was not conscious of an extreme risk that Johnson might die or be seriously injured.

A celebrated Second Circuit case also reflects the courts' insistence that the defendant is entitled to present evidence that negates fraudulent intent. *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015). Litvak was a securities broker who was involved in selling residential mortgage backed securities ("RMBS"). He was charged with fraud in connection with his sales of RMBS's. There were three categories of misrepresentations: (1) He lied about the cost at which his company acquired certain RMBS in his effort to convince a purchaser to pay more for the same RMBS's; (2) He lied when he said that he was negotiating for the purchase of certain RMBS's at a certain price in his efforts to re-sell the RMBS's, when, in fact, his company already owned the RMBS's at a lower price than the price he was about to pay to purchase the RMBS's; (3) In the process of purchasing RMBS's, he lied about the price at which he had negotiated to re-sell the RMBS's (falsely saying that the price was less than it actually was) and thereby induced the seller to sell the RMBS's to him at a cheaper price to enable him to make a profit. On the basis of these representations, Litvak was convicted of securities fraud and also making a false statement to the U.S. Treasury which was overseeing certain RMBS sales in connection with TARP. The securities fraud convictions were reversed, because the district court improperly excluded expert testimony offered by Litvak on the topic of materiality. The expert was

8

prepared to testify that a reasonable counter-party would not rely on representations made by Litvak; they would normally make their own determination of value, rather than relying on Litvak's representation about his company's price in purchasing (or the intended sales price of) the RMBS's.  This was the proper subject of expert testimony.  The Second Circuit also held that the trial court erred in excluding evidence offered by Litvak that his supervisors permitted these types of sales practices by other brokers, which, according to Litvak, demonstrated his good faith and his lack of intent to defraud.  The evidence was relevant to show that Litvak held an honest belief that he was not engaged in improper or illegal conduct.

One year earlier, the Second Circuit reversed another fraud conviction based on the erroneous exclusion of evidence relating to the "victim's" course of conduct which impacted the defendant's intent. *United States v. Certified Environmental Services, Inc.*, 753 F.3d 72 (2d Cir. 2014). Federal and State laws regulate the removal of asbestos from buildings, including OSHA regulations and the Clean Air Act.  A company that removes asbestos must comply with various laws regarding the method of removal and a separate "monitoring" company must monitor the air after the removal is accomplished.  The defendants in this case (a company and several employees) were involved in monitoring asbestos removal and were charged with not properly monitoring the asbestos removal and submitting false monitoring reports.  The defense sought to introduce evidence at trial about certain conversations with officials about their monitoring practices, specifically, whether particular monitoring practices were required if the location was not sufficiently "contained" (i.e., the area where the asbestos was being removed was not fully contained

9

which might result in the monitoring causing more contamination in nearby areas). The government objected that these conversations were hearsay. The trial court's exclusion of this evidence was reversible error. The evidence relating to the conversations with regulators was not offered to prove the truthfulness of the information provided by the regulators, but to prove that the defendants were acting in good faith when they engaged in certain monitoring practices. The fact that some of the conversations occurred after the criminal conduct occurred did not make the evidence irrelevant, because it was consistent with what the defendants claimed was their long-standing understanding of the monitoring rules. Thus, whether the defendant's reports were false or not, the circumstances demonstrated that they acted in good faith without an intent to deceive.

The Seventh Circuit in *United States v. Phillips*, 731 F.3d 649 (7th Cir. 2013) reached a similar result in a case involving false statements to a bank. In this *en banc* decision, the Seventh Circuit held that the defendants should have been permitted to introduce evidence that the defendants were told by their broker that lying in response to certain questions on a loan application form was permissible. The evidence was relevant to whether the defendants actually believed that answering the questions in that way would "influence" the bank's decision.

The defendants, therefore, urges the Court to reject the government's effort to cabin the defendants in their presentation of evidence. The defendants intend to show at trial that (1) they had no intent to defraud; (2) their belief was reasonable, because the contracts and claims did not prohibit the type of claims that were filed on the behalf of the defendants; (3) their belief was reasonable, moreover, because the insurance companies regularly paid

10

the claims; (4) to the extent that there was ambiguity in the contracts and claim forms, this was a problem that was caused by the drafters of these documents: the insurance companies; (5) if the contracts are to be interpreted as the insurers now argue they should be interpreted, then the court is confronted with a contract dispute, not a case of criminal fraud.

These defenses, each of which supports the introduction of evidence in support of the defendants reasonable belief and good faith intention, necessitates the rejection of the government's motion in limine.

Respectfully submitted this 16th day of February, 2021,

*s/ Donald F. Samuel*
Donald F. Samuel
Georgia Bar No. 624475
GARLAND, SAMUEL & LOEB. P.C.
3151 Maple Drive, N.E.
Atlanta, Georgia 30305
Telephone: (404) 262-2225
dfs@gsllaw.com

*Counsel for Defendant Aaron Durall, Admitted Pro Hac Vice*

*s/ Joshua Sabert Lowther*
Joshua Sabert Lowther
Georgia Bar No. 460398
LOWTHER WALKER LLC
101 Marietta ST, NW, STE 3325
Atlanta, GA 30303
Telephone: (912) 596-2935
jlowther@lowtherwalker.com

*Trial Counsel for Defendant Neisha Zaffuto, Admitted Pro Hac Vice*

*s/ Brendan Herbert*
Brendan Herbert
Florida Bar No. 0076925
POLSINELLI PC
1111 Brickell Avenue, Suite 2800
Miami, FL 33131
Telephone: (305) 921-1820
bherbert@polsinelli.com

*Counsel for Defendant Aaron Durall*

Brian McEvoy
Brian Rafferty
Grace Zoller
POLSINELLI PC
1201 West Peachtree St NW, Suite 1100
Atlanta, GA 30309
Telephone: (404) 253-6000
Facsimile: (404) 253-6060
bmcevoy@polsinelli.com
brafferty@polsinelli.com
gzoller@polsinelli.com

*Counsel for Aaron Durall, Admitted Pro Hac Vice*

David Haas
Florida Bar No. 0494674
HAAS LAW PLLC
201 S Orange Ave, STE 1017
Orlando, FL 32801
Telephone: (407) 755-7675
david@haaslawpllc.com

*Local Counsel for Defendant Neisha Zaffuto*

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:20-CR-86-TJC-PDB |
| AARON DURALL, et al, | |
| Defendants. | |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 16, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Brendan Herbert*
Brendan Herbert

13